# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11468-RGS

LEE P. UNITT

v.

DANIEL BENNETT, et al.

MEMORANDUM AND ORDER

April 10, 2018

STEARNS, D.J.

*Pro se* litigant Lee P. Unitt has filed a Complaint concerning various conditions of her confinement at MCI Framingham. *See* Dkt #1. Summonses have not been issued pending the court's preliminary review of the pleading pursuant to 28 U.S.C. § 1915A. Under this statute, the court may dismiss a prisoner's complaint *sua sponte* if it is "frivolous, malicious, fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

For the reasons set forth below, the court concludes that Unitt has improperly joined claims and parties and has failed to state a claim for

relief with regard to some of her claims.  If she wishes to pursue any of her claims, she must file amended pleadings to cure these deficiencies.

BACKGROUND

I.      Overview of the Complaint

Unitt complains of four different categories of misconduct at MCI Framingham: denial of access to the courts; inadequate medical care; exposure to contaminants; and retaliation for submitting grievances.  Unitt states that she brings this action under 42 U.S.C. § 1983 (§ 1983), the Americans with Disabilities Act, the Rehabilitation Act, and the Toxic Substance Control Act, 15 U.S.C. §§ 2601-2692 (TSCA).  Unitt represents that she has exhausted relevant administrative remedies.  Unitt submitted approximately 575 pages of documents as exhibits to the Complaint.  She identifies thirty individuals as defendants.  The court summarizes each category of allegations.

A.      Denial of Access to the Courts (¶¶ 30-53)

Under the heading of "Denial of Access to the Courts," Unitt sets forth various allegations concerning storage and retrieval of her legal documents, limitations on copying documents, the prison administration's definition of "legal" documents, the superintendent's refusal to allow Unitt's family to

pick up a document from her that was to be filed in court, and the denial of a grievance as untimely.

B.      Inadequate Medical Care (¶¶ 54-127)

Unitt's Complaint presents a panoply of allegations of misconduct with regard to the medical care she has received at MCI Framingham, which she has broken down into the following subcategories:  (a) failure to maintain an adequate system of filing and modification to inmate medical files; (b) failure to maintain accurate medical records; (c) rendering of medical services provided by unqualified personnel; (d) failure to provide access to medical specialists; (e) failure to follow the directions of outside specialists; (f) failure to provide adequate medical coverage; (g) charging inmates a monetary fee to view their medical records; (h) interference with medical care and mental health; (i) ineffective medical grievance procedures; and (j) non-medical personnel substituting their judgment for that of medical professionals.   In addition, she alleges that certain defendants violated the Americans with Disabilities Act and the Rehabilitation Act by denying her requests for reasonable accommodations. She further alleges that the defendants denied her right to informed consent.

C.    Exposure to Environmental Contaminants (¶¶ 128-134)

According to Unitt, inmates were evacuated from certain units at MCI Framingham in October 2016. Unitt had understood that the evacuation was because of contamination by black mold, asbestos, and other substances, but Massachusetts Department of Correction ("DOC") officials informed Unitt that the units were evacuated so the windows could be replaced and that no health hazards existed. Unitt alleges that the DOC failed to adequately test the units for contaminants and to follow proper procedures while replacing the windows to ensure proper encapsulation and removal of polychlorinated biphenyls ("PCBs"). Unitt further claims that inmates from another DOC facility performed labor on the window replacements.

D.    Retaliation for Exercising Constitutional Rights (¶¶ 135-163)

Unitt claims that various defendants retaliated against her for filing grievances or otherwise complaining of allegedly unlawful conduct in the following manners: (1) wrongly suspending her grievance privileges, claiming that she had filed more than five grievances in a week; (2) refusing to assign her a lower classification for which she was clearly qualified; (3) issuing false disciplinary reports, ostensibly for misusing the microwave oven, facing the wrong direction while sitting outside in the unit yard, and

improperly wearing shorts she had purchased from the DOC; and (4) denying needed medication, on the pretext that Unitt had refused to take her medications according to the proscribed schedule.

E.    Toxic Substance Control Act (¶¶ 164-173)

Unitt alleges that she has been and continues to be exposed to unsafe levels of PCBs at MCI Framingham, resulting in injury and risk of future injury.

II.    Other Motions

On January 10, 2018, Unitt filed a motion for leave to supplement her Complaint. *See* Dkt #10.  In the proposed supplemental pleading, Unitt complains of restrictions on the copying of legal documents, further exposure to contaminants, and a disciplinary sanction of the loss of canteen privileges for 60 days. *See* Dkt #10-1.  In a separate motion, she asks that the approximately 255 pages of exhibits to the proposed supplemental pleading be sealed because they "contain medical records and information not only of Unitt but of other individuals."  Dkt #11 at 1.

Unitt also filed two largely duplicative motions for emergency injunctive relief. *See* Dkt #12, Dkt #13.   In these motions, Unitt asked the court to issue a temporary restraining order and a preliminary injunction and to enjoin the defendants from requiring her and other inmates to move

to a unit at MCI Framingham in which new windows have recently been installed. She also asked the court to issue an order revoking a 60-day canteen suspension sanction and to enjoin enforcement of MCI Framingham's policy concerning the photocopying of legal documents. On February 5, 2018, the court entered an order denying these motions. *See* Dkt #14.

## DISCUSSION

### I.      Improper Joinder of Parties and Claims

As a threshold matter, the Complaint will not go forward in its present form because Unitt has improperly joined parties and claims.

#### A.      Rules Governing Joinder of Parties and Claims

Rule 18(a) of the Federal Rules of Civil Procedure provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). However, "[d]espite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action *only* if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." 7 Charles Alan Wright et al., *Federal Practice and Procedure* § 1655 (3d ed. 2009) (emphasis added). Rule 18(a) permits multiple claims against a

single party, but it does not permit the joinder of unrelated claims against different defendants. Under Rule 20(a) of the Federal Rules of Civil Procedure, persons may be joined as defendants in a single action if "there is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Moreover, where the plaintiff is a prisoner, requiring unrelated claims to be filed in different actions ensures that prisoners pay the required filing fees for their lawsuits and prevents prisoners from circumventing the "three strikes" rule under the Prison Litigation Reform Act. *See id.*

B.     Unitt Cannot Bring All Her Claims in a Single Pleading

Here, Unitt has not alleged that all of the defendants participated in the same transaction or series of transactions and that a question of fact or law is common to all of them. Unitt's broad characterization of her claims as those concerning "conditions of confinement" does not create the

necessary relationship between her claims to allow them to be asserted in a single lawsuit.

If Unitt wishes to pursue this action, she must file an amended complaint that complies with the rules of joinder of parties and claims. By necessity, her amended complaint will not contain all the claims asserted in the original Complaint. The $400 filing fee which Unitt has paid will continue to be applied to this case

To the extent that Unitt wishes to pursue claims that cannot be joined in a single lawsuit, she must file in this action as many separate proposed amended complaints as required to ensure compliance with the rules of joinder of claims and parties. Once filed in this action, the court will order that the proposed amended complaints be severed from this action, that a new docket number be assigned for each proposed amended complaint, and that the original Complaint and each proposed amended complaint be docketed in the new case(s). For purposes of the statute of limitations and relation back of amendments, the date this action was commenced (August 3, 2017) will be considered to be the commencement date of any new case

opened as result of severing claims from this action.[1]   Unitt will be responsible for a filing fee in each separate action.

As an amended complaint completely replaces an original complaint, *see Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008), Unitt should repeat in the amended complaint or proposed amended complaint(s) any allegations in the original Complaint that she wishes to be part of the operative pleading.   While exhibits may be attached to an amended complaint, they are not required and they are not a substitute for adequately pleading a claim within the body of the pleading.   At this early stage of the litigation, all well-pled allegations are taken to be true and considered in the light most favorable to the plaintiff.   A plaintiff is not required to provide admissible evidence of her claims at this point; she must simply adequately plead them.     Further, legal argument is unnecessary.

II.     Merit Review of Complaint

While the court will not allow the Complaint to go forward in its present form, the court nonetheless conducts a preliminary review of Unitt's claims.   This screening is not an exhaustive discussion of all of

---

[1]By clerical necessity, the case opening date for any case created by severing claims from this action will be the actual date the clerk assigns the new case number.

Unitt's claims. Any amended complaint or proposed amended complaint Unitt files may be subject to additional screening prior to the issuance of summonses.

In conducting this review, the court is mindful of the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, which mandates that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, Unitt must assert non-conclusory and non-speculative factual allegations that, accepted as true, "state at claim a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Unitt's obligation to provide the grounds of her claim "requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks

omitted).   A plaintiff must "nudge[] [her] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

A.     Section 1983

Unitt brings claims under § 1983, which provides that any "person," acting under the color of state law, who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.

1.     Personal Involvement

"It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable.'"  *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 146, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)).  "In § 1983 cases, 'supervisors are not automatically liable for the misconduct of those under their command.  A plaintiff must show an affirmative link between the subordinate officer and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'"  *Id.* (quoting *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000)).  The action or inaction of the supervisory authority must have "led

inexorably to the constitutional violation." *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cit. 2011) (citation omitted).

Thus, broad allegations against high-ranking government officials often fail to state a claim because their position alone is insufficient to show personal involvement. *See id.* at 534 (citing cases); *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." (alteration in original) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987))).

Unitt seeks to hold high-ranking state officials (*i.e.*, Secretary of Commonwelth's Executive Office of Public Safety, current and past DOC Commissioners) liable under § 1983 because of their general supervisory powers. *See* Compl. ¶¶ 3-4/c. Their statutory authority alone is inadequate to show the direct participation needed to hold them liable under § 1983. Similarly, to the extent that Unitt claims current and former superintendents of MCI Framingham are liable because they are statutorily defined as the "chief administrative officer" of the correctional facility, M.G.L. ch. 125, § 1(p) (cited in Compl. ¶ 5/c), their job descriptions alone do not permit an inference that they were directly involved in the alleged constitutional violations of their subordinates.

Further, a prison official who simply denies an administrative grievance of a constitutional violation has not necessarily directly participated in the underlying violation. *See, e.g., Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012) ("The 'denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.'" (quoting *Gallaher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009))); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Denial of an administrative grievance can constitute direct participation for purposes of § 1983 only when the denial itself works a constitutional violation. *See, e.g., Womble v. Harvanek*, -- Fed. App'x --, 2017 WL 6333936, at *4 (10th Cir. Dec. 12, 2017) (allegations that superintendent had denied prisoner's request for clean drinking water sufficiently pled the superintendent's direct personal involvement in a constitutional violation). Thus, in setting forth claims under § 1983 in an amended complaint, Unitt must pay allege facts supporting a reasonable inference that any defendant

whom she seeks to hold liable was directly involved in the alleged deprivation of a federal right.

### 2. State v. Local Governmental Defendants

A state, a state agency, or a state official sued in his or her official capacity is not subject to suit under § 1983, because a state is not a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Unitt cannot maintain a § 1983 claim against the DOC or any state employee in her or his official capacity.

Municipalities and other local governmental units are "persons" within the meaning of § 1983. *See Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 690-91 (1978). To assert a so-called "*Monell*" claim, a plaintiff must allege facts that, if true, prove that the "execution of a government's policy or custom . . . inflict[ed] the injury." *Id.* at 694. Unitt purports to assert "*Monell*" claims. However, this theory of liability is inapplicable to her factual allegations because she does not name a municipality or other local government as a defendant.

### 3. Federal Rights v. State Regulations

Unitt identifies numerous alleged violations of state regulations by the defendants. However, § 1983 provides a cause of action for deprivation of a right secured under the "Constitution and laws" of the United States,

42 U.S.C. § 1983, and the violation of a *state* law is not necessarily a violation of a federal right, *see, e.g.*, *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) ("It has long been established that the violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983."); *Ziegler v. Michigan*, 90 Fed. App'x 808, 810 (6th Cir. 2004) (upholding dismissal of prisoner's § 1983 claim that his mail was rejected in violation of state regulations, and stating that "violations of state rules do not state a claim under 42 U.S.C. § 1983").   While a defendant's purported violation of a state regulation is not always irrelevant to a § 1983 claim, *see, e.g.*, *Castro v. County of Los* Angeles, 833 F.3d 1060, 1076-77 (9th Cir. 2016) (existence of county regulation promulgated to prevent conduct amounting to a constitutional violation proved that county knew of the risk of the very harm that befell the plaintiff), it has no import if Unitt fails to allege specific facts from which the court can reasonably infer that the defendants violated a right guaranteed under *federal* law.

B.     Denial of Access to the Courts

As currently pled, Unitt's claims for denial of access to the court fails to state a claim upon which relief may be granted.   "The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by

providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, to assert a claim for denial of access to the courts, a prisoner must allege that the failure to provide the legal resources required in *Bounds* resulted in actual injury. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Logue v. Chatham County Detention Ctr.*, 152 Fed. App'x 781, 784 (11th Cir. 2005) (per curiam) ("To have standing to seek relief under § 1983 based on the denial copying privileges, a plaintiff must show *actual injury* by showing that the denial actually impeded a non-frivolous claim). Here, Unitt has failed to adequately plead that she was prejudiced by the defendants' alleged misconduct with regards to her access to the courts.

### 1. Inability to Access Legal Documents

Unitt does claim that her inability to access her legal documents was the reason that she was unable to comply with an order in *Unitt v. Helsel, et al.*, C.A. No. 13-11926-WGY ("*Helsel*"), and that her failure to comply led to the dismissal of the action.[2] However, *Helsel* belies any assertion that lack of access to Unitt's legal papers actually impeded a non-frivolous claim. As

---

[2]*Unitt v. Helsel, et al.*, C.A. No. 13-11926-WGY was originally assigned to Judge Joseph L. Tauro. It was randomly assigned to Judge Douglas P. Woodlock on December 26, 2013, after Judge Tauro took senior status. On June 9, 2015, the case was randomly assigned to Judge William G. Young after Judge Woodlock took senior status.

Judge Tauro summarized in his September 24, 2013 memorandum and order, Unitt had filed a civil complaint against the Board of Bar Overseers, its investigators, prosecutors, and investigators for the prosecutors, alleging that they had violated her civil rights in conjunction with the state investigation and criminal prosecution against her. *See Helsel*, Dkt #7. Reviewing the Complaint pursuant to 28 U.S.C. § 1915A, Judge Tauro stated that the action had a "fatal flaw": it was an impermissible attack on Unitt's intact conviction. Citing *Heck v. Humphrey*, 512 U.S. 477 (1994), Judge Tauro found that, because success on the merits of Unitt's claims would necessarily imply the invalidity of her conviction or sentence, she could not state a claim for relief unless her conviction had been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487.[3]

Judge Tauro also held that the Complaint did not meet the pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedures, claims against state actors in their official capacity were barred by Eleventh

---

[3]*See also Heck*, 512 at 489-90 ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence *does not accrue until the conviction or sentence has been invalidated*." (emphasis added)).

Amendment immunity, 18 U.S.C. § 242 does not provide a private action, and the allegations did not support a claim under 42 U.S.C. § 1985(2) or (3). Judge Tauro ordered Unitt to show good cause within 42 days why the Complaint should not be dismissed. She was warned that failure to comply with the directive would result in dismissal of the action.

The original deadline for the show cause response was November 5, 2013. Unitt filed several motions for additional time to comply with the show cause order, citing difficulties accessing her legal documents. On March 28, 2015, Judge Woodlock set a final deadline of April 17, 2015, and warned Unitt that failure to meet the deadline would result in dismissal of the action. *See Helsel*, Dkt #17. On April 15, 2015, Unitt filed a motion requesting 120 more days to file an amended complaint. *See Helsel*, Dkt #20. On June 11, 2015, Judge Young dismissed the action for failure to comply with the show cause order and denied all pending motions as moot. *See Helsel*, Dkt #22. Unitt appealed the dismissal, but First Circuit dismissed the appeal for failure to resolve the appeal fee. *See Helsel*, Dkt #31.

Crediting Unitt's allegations that the defendants had wrongfully denied her access to her legal documents, the court cannot discern any actual prejudice with regard to Unitt's ability to respond to Judge Tauro's

show cause order. The "fatal flaw" of Unitt's Complaint was that success on her claims challenging the investigation and prosecution of her would necessarily imply the invalidity of her conviction, and that her conviction appeared to be intact. To overcome this barrier, Unitt needed to allege facts from which the court could reasonably infer that the criminal proceedings against her had been terminated in her favor. Given her own statement that she was pursuing her direct appeal at the time, it would have been impossible for her to meet this requirement even if she had full access to her legal documents.

Moreover, if Unitt's conviction had been overturned on direct appeal or invalidated by a court or tribunal, she could have simply alleged the same. Well-pled allegations are sufficient for a pleading, the purpose of which is to provide notice — rather than proof — of a claim. Documentary evidence is not required. Similarly, the Rule 8 pleading deficiencies Judge Tauro identified could have been cured without a detailed description of the alleged misconduct and submission of documents.

### 2. Other Conduct Allegedly Denying Access to the Courts

Unitt does not allege that the superintendent's refusal to allow her family to pick up documents she wanted filed with the court resulted in any prejudice. Further, any denial of copies or delay in waiting for copies is not,

in itself, unconstitutional. *See Boivin v. Black*, 225 F.3d 36, 42 (1st Cir. 2000) ("The constitutionally-protected right of access to the courts is narrow in scope. To illustrate, the right of access to the courts does not extend to enabling prisoners to litigate with maximum effectiveness once in court." (citation omitted)); *Miller v. Donald*, 132 Fed. App'x 270, 272 (11th Cir. 2005) (per curiam) (prison officials' refusal to provide inmate with copies of papers he was required to serve did not deny him of access to the courts where inmate did not allege that court would not accept service of hand-copied duplicates).

C.    Inadequate Medical Care (§ 1983)

Although Unitt identifies numerous errors the defendants allegedly made in providing her health care, she has failed to state a plausible claim that the defendants violated her rights under the Eighth Amendment. The court cannot reasonably infer from her allegations that the defendants were deliberately indifferent to her serious medical needs.

1.    Requirements for a § 1983 Claim for Lack of Medical Care

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of

Stewart, Powell and Stevens, JJ.)).  However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Id.* at 105, 106.  "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Id.* at 106.

An Eighth Amendment claim for inadequate medical care consists of a subjective and an objective component.  *See Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015).  As to the objective component, the plaintiff must plead facts which, if true, demonstrate that the deprivation was "sufficiently serious." *Id.* (quoting *Leavitt v. Corr. Med. Servs.*, 645 F.3d 484, 497 (1st Cir. 2011)). "[A] serious medical need is 'one that is so obvious that even a lay person would easily recognize the necessity for a doctors' attention.'"  *Id.* at 78-79 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 2018 (1st Cir. 1990)).  "A significant risk of future harm that prison administrators fail to mitigate may suffice under the objective prong."  *Kosilek v. Spencer*, 774 F.3d 63, 85 (1st Cir. 2014).

The subjective component requires factual allegations supporting an inference of "deliberate indifference" by the defendant, a benchmark which

"defines a narrow band of conduct." *Id.* (quoting *Fenney v. Corr. Med. Servs. Inc.*, 464 F.3d 158, 162 (1st Cir. 2006)). This standard requires allegations supporting a conclusion that "that the absence or inadequacy of treatment is intentional" rather than simply inadvertent. *Perry*, 782 F.3d at 78. "The obvious case [of deliberate indifference] would be a denial of needed medical treatment in order to punish the inmate." *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993). "But deliberate indifference may also reside in 'wanton' decisions to deny or delay care where the action is recklessness, 'not in the tort law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302 (1991), and *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991)). Further, "[t]he right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981). Similarly, "[w]here the dispute concerns not the absence of help, but the choice of a certain course of treatment, deliberate indifference may be found only if the attention received is so clearly inadequate as to amount to a refusal to provide essential care." *Leavitt*, 645 F.3d at 503 (internal quotation marks and citations omitted).

"[T]he subjective deliberate indifference inquiry may overlap with the objective serious medical need determination." *Id.* at 497 (quoting *Smith v. Carpenter*, 316 F.3d 178, 187 n.12 (2d Cir. 2003)). "[S]imilar evidence, including evidence of adverse effects, may be relevant to both components." *Id.* (quoting *Smith*, 316 F.3d at 187 n.12).

2.    Unitt's Medical Care § 1983 Claims Are Deficient

Unitt's § 1983 claims for lack of adequate medical care are not sufficiently pled.  Unitt has not pled facts from which the court can reasonably infer that the alleged deprivation of medical care was "sufficiently serious"  Although she states that she suffers from numerous medical conditions or events (*e.g.*,  fibromuscular dysplasia, transient ischemic attacks, cerebrovascular accidents caused by malignant hypertension), pleading a serious medical *condition* alone is insufficient. Rather, Unitt must "allege acts or omissions *sufficiently harmful* to evidence deliberate indifference to *serious medical needs*." *Estelle*, 429 U.S. at 106 (emphases added).

Unitt does assert that the defendants' conduct was lacking with regard to numerous aspects of her care.  But, significantly, she does not allege facts supporting an inference that she had a "serious medical need" for the services or treatments that were delayed or denied.  Further, she

does not clearly allege that these purported deficiencies in care injured her at all, or at least to a "sufficiently serious" degree suggesting that the defendants acted with deliberate indifference. *See, e.g.*, *Braga v. Hodgson*, 605 F.3d 58, 61 (1st Cir. 2010) (upholding summary judgment in favor of correction officers who had allegedly prevented plaintiff from timely receiving his medication because plaintiff did "not allege that he suffered any ill effect from this medication delay"); *see also Jones v. Bokor*, 443 Fed. App'x 327, 330 (10th Cir. 2011) (affirming summary judgment in favor of defendants, where 16-month delay between appointment with nurse practitioner and examination by a doctor did not result in substantial harm); *Johnson v. Talley*, 243 Fed. App'x 10, 11 (5th Cir. 2007) (per curiam) (affirming dismissal although prisoner's cell and work assignments violated his medical restrictions, prison doctor was deliberately indifferent to his medical needs where he failed to show that he was injured by the placement); *cf. Acevedo-Luis v. Pagan*, 478 F.3d 35, 38 (1st Cir. 2007) ("It is usually the case that 'no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury.'" (quoting *Farrar v. Hobby,* 506 U.S. 103, 112 (1992))).

While Unitt's numerous exhibits may contain fodder for remedying these pleading deficiencies, it is incumbent on Unitt to include key allegations in the body of the complaint.

D.     Toxic Substance Control Act

To the extent that Unitt seeks separate relief under the TSCA, the court puts her on notice that she cannot recover damages under that statute. *See Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affairs*, 426 F.3d 241, 248 n.5 (3d Cir. 2005) (TSCA "the does not permit private citizens to pursue either civil penalties available under the statute (which may only be imposed by the EPA), or compensation for personal injuries." (citations omitted)); *cf. Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 150, 152 (4th Cir. 1994) (where landowners brought negligence claim for compensatory damages and referenced TSCA and other federal environmental statutes, subject matter jurisdiction did not exist under 28 U.S.C. § 1331 because the federal statutes did not provide for compensatory damages).

E.     Standing

Unitt refers to the alleged injuries other inmates have suffered because of the defendants' purported misconduct. *See, e.g.*, Compl. at 34 (requesting compensatory damages of $200 million for exposure to

contaminates "to be placed in a Fund for past and present Correctional Officers who have served at [MCI Framingham]"). To the extent she is attempting to bring claims based on injuries to others, she cannot do so. She only has standing to bring claims resulting from her own injuries. *See Bingham v. Massachusetts*, 616 F.3d 1, 5 (1st Cir. 2010).

III. Pending Motions

In light of Unitt's misjoinder of claims and parties, the court denies without prejudice her motions to file a supplemental pleading. Unitt may include relevant allegations in her amended complaint or proposed amended complaint(s).

The motion to seal the exhibits to the proposed supplemental pleading will be granted. Going forward, Unitt should carefully consider the need to file exhibits at the pleading stage. To the extent she elects to file exhibits, she should separate the exhibits that are appropriate for the public docket from those that she wishes to be sealed. This will minimize the number of documents potentially subject to sealing.

ORDER

For the foregoing reasons:

1.    If Unitt wishes to pursue this action, she must file an amended complaint that complies with the rules of joinder of parties and claims set

out above.  By necessity, her amended complaint will not contain all the claims asserted in the original Complaint.  The $400 filing fee which Unitt has paid will continue to be applied to this case.  The amended complaint must be filed within 42 days of the date of this order (May 22, 2018). Failure to comply with this order will result in dismissal of the case.

2.     To the extent that Unitt wishes to pursue claims that cannot be joined in a single lawsuit, she must file, within 42 days of the date of this order (May 22, 2018), as many separate *proposed* amended complaints as required to ensure compliance with the rules of joinder of claims and parties.  The proposed amended complaints should be captioned as such ("Proposed Amended Complaint") and filed in this action.  Once filed in this action, the court will order that any proposed amended complaint be severed from this action and, with the original Complaint in this action, docketed as a new case.  Unitt will be required to pay a $400 filing fee for each of these cases.  As long as a proposed amended complaint is filed by May 22, 2018, for purposes of the statute of limitations and relation back of amendments, the date this action was commenced (August 3, 2017) will be considered to be the commencement date of any new case opened as result of severing claims from this action.

3.      Any claim raised in the original Complaint that is not raised in a timely-filed amended complaint or a timely-filed proposed amended complaint will be dismissed without prejudice.

4.      The motion for leave to file supplemental pleadings, Dkt #10, is DENIED WITHOUT PREJUDICE.

5.      The motion to seal, Dkt #11, is GRANTED.

**SO ORDERED.**

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE