UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11468-RGS

LEE P. UNITT

v.

DANIEL BENNETT, et al.

ORDER

May 7, 2019

STEARNS, D.J.

Now before the court is the Motion to Dismiss (#65) of defendants Christine Horn, RN, Carrie Holowecki, LCSW, Cesar Novoa, PA, Betty Richards, RN, and Amanda Brown, RN (collectively, the "Medical Defendants"). The Medical Defendants represent that they were employed by the Massachusetts Partnership for Correctional Health ("MPCH") during the relevant time period. They ask that the court dismiss all counts against them pursuant Rule 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated below, the motion is GRANTED in part and DENIED in part.

BACKGROUND

The court writes for the parties and assumes their familiarity with the lengthy Second Amended Complaint ("SAC") (#59). In short, *pro se* plaintiff Lee Unitt suffers from a rare, chronic medical condition known as Fibromuscular Dysplasia ("FMD") which is characterized by abnormal cell growth within the artery walls.[1] She was diagnosed with this condition in 2011, before she came into the care and custody of the Massachusetts Department of Correction in 2013. Unitt claims that, because of alleged exposure to asbestos, PCBs, and other harmful airborne particulates while incarcerated at MCI Framingham, the FMD has worsened and her left renal artery has become increasingly stenotic, or narrowed. She was also diagnosed with type II diabetes in 2015. The prescription medications Unitt takes to treat hypertension, malignant hypertension, and diabetes also prevent the ability of the body to thermoregulate. She claims that the Medical Defendants have failed to provide adequate care for her medical condition.

---

[1] The court has, as it must for purposes of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "accept[ed] all well-pled facts in the complaint as true, and draw[n] all reasonable inferences in favor of the plaintiff," *Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019),

DISCUSSION

I. Claims under 42 U.S.C. § 1983

Unitt brings claims against the Medical Defendants under 42 U.S.C. § 1983 ("§ 1983"), alleging that they violated the Eighth Amendment. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell and Stevens, JJ.)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-105 (footnotes omitted). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment," and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 105, 106.

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An Eighth Amendment claim for inadequate medical care consists of subjective and objective components. *See Kosilek*

*v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc). As to the objective component, a plaintiff must plead facts, which, if true, show "a serious medical need for which [the plaintiff] has received inadequate treatment." *Id.* at 85. The subjective component requires factual allegations supporting an inference of "deliberate indifference" by the defendant. *Id.* at 83.

A.  Defendants Novoa and Holowacki

Unitt's allegations can be fairly construed to allege that she had an objectively serious medical need to have a fan in her cell to help her regulate her body temperature. Unitt's own doctor had conveyed this in a report soon after she began serving her sentence. On February 10, 2016 Unitt was seen by a nephrologist at Lemuel Shattuck Hospital, who, in a written report, explained why body temperature regulation was crucial for Unitt, advised that having a fan in her cell could help manage body temperature, and stated, "Please follow my recommendations." SAC ¶ 45. Unitt conveyed these two reports to Novoa and Holowacki on March 18, 2016 and April 1, 2016, respectively, and asked that she be able to have an extra fan in her cell. Novoa's initial response was to submit a request for a fan for Unitt. However, when that request was denied by a DOC employee without medical training, Novoa allowed her professional medical judgment to be overruled, thus demonstrating deliberate indifference to

4

Unitt's serious medical condition. Holowacki evinced deliberate indifference by denying Unitt's request, telling her that there was no requirement that the recommendations of outside physicians be followed.

On May 20, 2016, Unitt was seen by Dr. Groblewski, the statewide medical director for MPCH. On May 25, 2016, Novoa placed another request for Unitt to have a fan. However, on May 25, 2016, during a heat wave, Unitt allegedly suffered a stroke, or cerebrovascular accident ("CVA"), which left her with "further residual right sided weakness and a right facial droop, causing her to lisp for approx. five days." *Id.* ¶ 59. In the following days, she allegedly suffered three mini-strokes, or transient ischemic attacks ("TIA"). Unitt was finally provided a fan on June 24, 2016.

B. Defendant Brown

Unitt also has adequately pled a § 1983 claim against Brown. On May 27, 2016, two days after suffering a stroke, Unitt went to the "Trauma" office at the insistence of a correctional officer. She was seen by Brown, who did not consult Unitt's medical files. Although Unitt's tongue was swollen, she was lisping, and she had a right facial droop, Brown simply asked Unitt, "[A]part from your normal symptoms of TIAs and strokes, what's new?" *Id.* ¶ 90. Instead of immediately referring Unitt to a physician, Brown simply sent Unitt back to her cell. Because of the heat

wave and the conditions in her cell, Unitt allegedly experienced three mini-strokes over the next four days. From these allegations, the court can reasonably infer that, because Unitt showed obvious signs of having suffered a stroke, she had a serious medical need. The court can also reasonably infer that, by failing immediately to refer Unitt to a physician and requiring that she return to the conditions that had led to the stroke, Brown acted with deliberate indifference.

C. Defendant Richards

The § 1983 claim against Brown is adequately pled. According to Unitt, on March 24, 2018, her right leg--from below her knee cap through her foot--"was a mass of black-purple contusions from internal bleeding, swelling throughout with a hematoma, 2" vertical and ¾" horizontal." SAC ¶ 96. A correction officer, who was horrified by the condition, took pictures of Unitt's leg and instructed her to go to Trauma for examination. Unitt was seen by Richards, who merely gave Unitt an ice pack, told her to file a "sick slip," and sent Unit back to her unit. Richards did not review Unitt's medical records, take her vitals, ask Unitt how much pain she was experiencing, or summon a physician. Unitt was later diagnosed with and treated for a dissected artery. Because she did not immediately receive adequate medical attention, cauterization of the artery was not timely and

Unitt continues to suffer pain and disfiguration from this episode. Unitt's allegations of significant swelling and discoloration in her lower right leg rise to the level of a serious medical need, and the allegedly minimal care that Richards provided can be construed as deliberate indifference.

D.     Defendant Horn

Unitt has failed to adequately plead an Eighth Amendment violation with regard to Horn. The court assumes that Unitt has sufficiently alleged a serious medical need because she must have certain medications taken at specific intervals. However, Unitt has not adequately alleged that Horn was deliberately indifferent to that need. According to Unitt, through Nurse "Heather," Horn conveyed to Unitt that she would have to stay in the Health Services Unit unless she agreed to take her medications with the general population when the medications "cart" circulated. Unitt claims that, unless she stayed in the Health Services Unit, she would receive her medication at unpredictable times and at intervals that could put her health and life in jeopardy. Nonetheless, Unitt does not suggest that Horn failed to offer a viable option that would allow Unitt to take her medications at the medically appropriate intervals. Even if an extended stay in the Health Services Unit does not offer a prisoner the same freedom of movement as

7

placement in the general population, under the facts alleged, Unitt has failed to allege deliberate indifference by Horn.

E. Qualified Immunity

Qualified immunity protects public officials, acting in their individual capacity, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Assuming, without deciding, that the Medical Defendants can invoke qualified immunity, the court denies their motion to dismiss with regard to this defense. Unitt has adequately pled Eighth Amendment violations by Novoa, Holowacki, Brown, and Richards. Her theory of liability is not so novel that the court can determine, based on the pleadings alone, that her rights were not "clearly established" or that a reasonable person would not have been aware of said rights. The applicability of a qualified immunity defense may be raised in a motion for summary judgment.

## II. Americans with Disabilities Act

The court GRANTS the motion to dismiss the claims under the Americans with Disabilities Act ("ADA").

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute defines "public entity" to include "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State . . . or local government." 42 U.S.C. § 12131(1).

Thus, the only proper defendant in a claim under Title II of the ADA is a "public entity," which precludes individual liability. *See Wiesman v. Hill*, 629 F. Supp. 2d 106, 112 (D. Mass. 2009). Further, MPCH is not a "public entity" for purposes of Title II of the ADA. *See, e.g.*, *Matthews v. Penn. Dep't of Corr.*, 613 Fed. App'x 163 (3d Cir. 2015) (holding that private company that contracted with state to provide medical care to prisoners was not a "public entity" for purposes of Title II of the ADA; *Wilkins-Jones v County of Alameda*, 859 F. Supp. 2d 1039, 1045 (N.D. Cal. 2012) (holding that private contractor that contracted with county to provide medical care assessment services for county jail detainees did not qualify as a "public entity" for purposes of Title II of the ADA).

## CONCLUSION

For the foregoing reasons, the Medical Defendants' Motion to Dismiss (#65) is GRANTED in part and DENIED in part as follows:

1. The claims under the ADA are DISMISSED as to all defendants.

2. The § 1983 claims against Horn are DISMISSED.

3. The motion is DENIED with regard to the § 1983 claims against Novoa, Holowacki, Brown, and Richards. These claims shall go forward.

**SO ORDERED.**

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE