UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11468-RGS

LEE P. UNITT

v.

DANIEL BENNETT, et al.

ORDER ON MEDICAL DEFENDANTS'
DAMIGELLA, SHOLUDKO, GAFFAR, and DESCOTEAUX's
MOTION TO DISMISS

July 30, 2019

STEARNS, D.J.

Before the court is the Motion to Dismiss (#74) of defendants Bonnie Damigella, RN, Lisa Sholudko, Dr. Khatija Gaffar, and Dr. Steven Descoteaux (collectively, the Medical Defendants).[1] The Medical Defendants represent that they were employed by the Massachusetts Partnership for Correctional Health (MPCH) during the relevant time period. They ask that the court dismiss all counts against them pursuant Rule 12(b)(6) for failure

---

[1] The court has already adjudicated the motion to dismiss of a separate group of "Medical Defendants" (consisting of defendants Brown, Halowecki, Horn, Novoa and Richards) (#76). As used in this Memorandum and Order "Medical Defendants" refers only to defendants Damigella, Sholudko, Gaffar, and Descoteaux.

to state a claim upon which relief may be granted. For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## BACKGROUND

The court writes for the parties and assumes their familiarity with the lengthy Second Amended Complaint (SAC) (#59). In short, *pro se* plaintiff Lee Unitt suffers from a rare, chronic medical condition known as Fibromuscular Dysplasia (FMD) which is characterized by abnormal cell growth within the artery walls.[2] She was diagnosed with this condition in 2011, before she came into the care and custody of the Massachusetts Department of Correction in 2013. Unitt claims that, because of alleged exposure to asbestos, PCBs, and other harmful airborne particulates while incarcerated at MCI Framingham, the FMD has worsened and her left renal artery has become increasingly stenotic, or narrowed. She was also diagnosed with type II diabetes in 2015. The prescription medications Unitt takes to treat hypertension, malignant hypertension, and diabetes also prevent the ability of the body to thermoregulate. She claims that the

---

[2] The court has, as it must for purposes of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "accept[ed] all well-pled facts in the complaint as true, and draw[n] all reasonable inferences in favor of the plaintiff," *Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019),

Medical Defendants have failed to provide adequate care for her medical condition.

## DISCUSSION

### I. Claims under 42 U.S.C. § 1983

Unitt brings claims against the Medical Defendants under 42 U.S.C. § 1983, alleging that they violated the Eighth Amendment. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell and Stevens, JJ.)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-105 (footnotes omitted). However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment," and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 105, 106.

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious

medical needs." *Id.* at 106. An Eighth Amendment claim for inadequate medical care consists of subjective and objective components. *See Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc). As to the objective component, a plaintiff must plead facts, which, if true, show "a serious medical need for which [the plaintiff] has received inadequate treatment." *Id.* at 85. The subjective component requires factual allegations supporting an inference of "deliberate indifference" by the defendant. *Id.* at 83.

Here, the Medical Defendants argue that the § 1983 claims against them should be dismissed because (1) Unitt has failed to exhaust her administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"); (2) Unitt has failed to plead facts showing that she has a serious medical need for which she has received inadequate treatment and that the Medical Defendants acted with deliberate indifference; and (3) the Medical Defendants are entitled to qualified immunity. The court will address these arguments *seriatim*.

A. Failure to Exhaust

The Medical Defendants maintain that Unitt's claims are barred by the administrative exhaustion requirement of the PLRA. They represent that Unitt failed to file grievances in accordance with the MPCH grievance procedures on a variety of issue and that she did not file a grievance which

even mentions the name of any Medical Defendants. In support of this, the Medical Defendants refer to medical grievances by Unitt which they submitted in support of their motion. Citing generally to those same grievances, the Medical Defendants further assert that, since the date of the alleged events from which Unitt's claims against the Medical Defendants arise, she has not filed any grievances or grievance appeals.

Unitt contends that she has properly exhausted her administrative remedies, and that the PLRA exhaustion requirement does not require exhaustion through the MPCH grievance process. Unitt further states that, under DOC regulations, she is not required to identify in the grievance all persons allegedly involved in the complained-of event or condition. Unitt submitted copies of various grievances in support of her argument. *See* Pl.'s Mem. Opp'n Dismiss Ex. (#84-1).

Under the PLRA, Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). However, Unitt is not required to plead exhaustion under the PLRA because it is not an element of her claim. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Further, the court cannot consider

extrinsic material on a 12(b)(6) motion. *See Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013).

The Medical Defendants invite the court to consider their motion on this issue as one for summary judgment. The court declines. Summary judgment is only permissible where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard is not met here. There are genuine disputes concerning the existence, absence and adequacy of grievances filed by Unitt.

B.   Serious Medical Need and Deliberate Indifference

   1.   Lisa Sholudko

According to Unitt, Sholudko has been the Clinical Operational Manager/Clinical Administrator of MCI Framingham since 2016. Sholudko is the "designee" of the Health Services Administrator and was the individual that Dr. Tsinteris called in 2016 and 2017 with regard to special accommodations for Unitt. Dr. Tsinteris prescribed a "no wrist cuff," absent which improvements Unitt had made in the physical therapy would have been "severely undone" and Unitt would have suffered "immense pain." SAC ¶ 113. Dr. Tsinteris also prescribed an "egg crate" to help with Unitt's shoulder injury. *See id.* ¶ 114. She asked that Unitt receive a "front of the

line pass" so that she would not have to stand in the medication line for 35-45 minutes with an injured leg. *See id.* ¶ 115. Dr. Tsinteris wanted Unitt's meals be delivered to her in the unit because Unitt suffered internal bleeding her leg. *See id.* ¶ 116. Although aware of Unitt's medical status, Sholudko denied these accommodations, falsely representing to Dr. Tsinteris that they were unavailable to inmates. Unitt finally was able to receive a "front of the line pass" six months after the original request. The court can reasonably infer from these allegations that Unitt had a serious medical need to which Sholudko was deliberately indifferent.

2. Bonnie Damigella and Khatija Gaffar

Unitt represents that Damigella has been the Health Services Administrator ("HSA") of MCI Framingham since 2016. Her duties include ensuring that inmate medical records are kept in a uniform manner that adequately meets the needs of the medical staff. She was also responsible for developing a written plan for individuals with special needs, chronic care, or otherwise requiring close medical supervision. Such plan should address short and long-term goals, adaptation to the correctional environment, medication, type and frequency of laboratory and other diagnostic testing; the frequency of follow up for medical evaluation, and provisions for referral

to supporting or rehabilitative services. In addition, her duties included documenting inmate accommodations and assessing staffing levels. *See* SAC ¶ 16.

Unitt claims that the failure of Damigella to maintain an adequate system of medical record keeping violated her Eighth Amendment rights. She asserts that, on at least ten occasions she was injured or exposed to risk of injury because medical providers could not locate or were not provided with medical records in the DOC's custody. . *See id.* ¶¶ 67-76. Unitt also claims that Damigella failed to ensure that she had a wheelchair for an appointment at Massachusetts General Hospital. When Unitt discovered that she would have to walk in ankle cuffs and with an injured leg from the garage to the renal vascular suite, she was forced to refuse the appointment. *See id.* ¶ 130.

Unitt identifies Khatija Gaffar as the site Medical Director. She represents that Gaffar has an office within the IHSU. Like Damigella, Gaffar's duties included developing a written plan for any inmates with special medical needs. In addition, Gaffar has final authority for making or

approving all medical decisions regarding medical care to inmates at MCI Framingham. *See id.* ¶ 19.

For purposes of the Memorandum and Order, the court will assume, without deciding, that, with regard to the allegations above, Unitt had a serious medical need for which she received inadequate treatment.[3] Indeed, considering the totality of Unitt's allegations, the court can reasonably infer that she suffered from one or more complex and serious medical conditions for which she received only piecemeal treatment. On various occasions, she allegedly made significant efforts to educate her medical care providers at MCI Framingham of the nature of her illness and her treatment needs, only to have the suggestions and orders of non-MPCH doctors ignored by medical providers at MCI Framingham.

The allegations of insufficient record-keeping are also troubling: a doctor who could not locate her medical records prescribed medication that could have increased her risk for strokes; specialty appointments had to be

---

[3] In support of their argument that Unitt has failed to allege facts, which, taken as true, show she had a serious medical need for which she received inadequate treatment, the Medical Defendants point to Unitt's acknowledgment of the medical tests, medical examinations, medications, and prescriptions that she received at MCI Framingham. While Unitt's receipt of these services suggest that her medical needs were not completely ignored, they do not, as the Medical Defendants assert, "demonstrate that she has been provided with care that is more than adequate." Defs.' Mem. Supp. Mot. Dismiss (#75) at 9-10.

rescheduled because relevant test results from Unitt's medical file could not be located; an MRI technician was not informed that Unitt was severely allergic to contrast dye, resulting in confusion and delay.

Notwithstanding, these allegations do not state violations of the Eighth Amendment because the court cannot reasonably infer therefrom that defendants Damigella and Gaffar acted with deliberate indifference. Their alleged oversights or inaction suggest negligence rather than the wanton infliction of pain. *See Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 498 (1st Cir. 2011) (" But carelessness or inadvertence falls short of the Eighth Amendment standard of deliberate indifference.").

### 3. Steven Descouteaux

Unitt alleges that Steven Descouteax was one of the officials responsible for all MPCH policies and procedures. She claims that the collective failure of Descouteax and other MPCH officials to ensure that these policies and procedures were enforced led to and contributed to her worsened condition. She claims that Desoteaux and others "are in the position of authority where they have notice of these autarchic conditions which lead and continue to lead to depravation" of Unitt's Eight Amendment rights. SAC ¶ 137. The court cannot reasonable infer from this conclusory

allegation that Descouteaux was deliberately indifferent to Unitt's serious medical needs.

C. Qualified Immunity

Qualified immunity protects public officials, acting in their individual capacity, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Assuming, without deciding, that Sholudko can invoke qualified immunity even though she was the employee of a government contractor, the court denies her motion to dismiss with regard to this defense. Unitt's theory of liability is not so novel that the court can determine, based on the pleadings alone, that her rights were not "clearly established" or that a reasonable person would not have been aware of said rights. At this point, the issue of qualified immunity turns on unresolved questions of fact. The applicability of a qualified immunity defense may be raised in a motion for summary judgment.

II. Americans with Disabilities Act

The court GRANTS the motion to dismiss the claims under the Americans with Disabilities Act (ADA).

11

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute defines "public entity" to include "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State . . . or local government." 42 U.S.C. § 12131(1).

Thus, the only proper defendant in a claim under Title II of the ADA is a "public entity," which precludes individual liability. *See Wiesman v. Hill*, 629 F. Supp. 2d 106, 112 (D. Mass. 2009). Further, MPCH is not a "public entity" for purposes of Title II of the ADA. *See, e.g.*, *Matthews v. Penn. Dep't of Corr.*, 613 Fed. App'x 163 (3d Cir. 2015) (holding that private company that contracted with state to provide medical care to prisoners was not a "public entity" for purposes of Title II of the ADA; *Wilkins-Jones v County of Alameda*, 859 F. Supp. 2d 1039, 1045 (N.D. Cal. 2012) (holding that private contractor that contracted with county to provide medical care assessment services for county jail detainees did not qualify as a "public entity" for purposes of Title II of the ADA).

## CONCLUSION

For the foregoing reasons, the Medical Defendants' Motion to Dismiss (#65) is GRANTED in part and DENIED in part as follows:

1. The claims under the ADA are DISMISSED as to all defendants.

2. The § 1983 claims against Damigella, Gaffar, and Descouteaux are DISMISSED.

3. The motion is DENIED with regard to the § 1983 claims against Sholudko. These claims will go forward.

**SO ORDERED.**

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE