UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11468-RGS

LEE P. UNITT

v.

LUIS SPENCER, et al.

ORDER ON DEFENDANTS'
COLLINS, GAFFNEY, and PELLETIER's
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>

March 9, 2020

STEARNS, D.J.

Before the court is a Motion for Judgment on the Pleadings brought by defendants Stephanie Collins (Assistant Deputy Commissioner for Clinical Services of the Massachusetts Department of Corrections), Erin Gaffney (former Deputy of Operations at MCI-Framingham), and Kyle Pelletier (Deputy of Treatment and ADA Coordinator at MCI-Framingham). Pursuant to Fed. R. Civ. P. 12(c), these defendants move for judgment on the pleadings with respect to Unitt's claims against them. For the reasons stated below, the motion will be GRANTED in part and provisionally DENIED in part.

## BACKGROUND

The court writes for the parties and assumes their familiarity with the lengthy Second Amended Complaint (SAC) (#59). In short, *pro se* plaintiff Lee Unitt suffers from a rare, chronic medical condition known as Fibromuscular Dysplasia (FMD), which is characterized by abnormal cell growth within the artery walls.[1] She was diagnosed with this condition in 2011, before she came into the care and custody of the Massachusetts Department of Correction in 2013. Unitt claims that, because of alleged exposure to asbestos, PCBs, and other harmful airborne particulates while incarcerated at MCI-Framingham, the FMD has worsened and her left renal artery has become increasingly stenotic, or narrowed. She was also diagnosed with type II diabetes in 2015. The prescription medications Unitt takes to treat hypertension, malignant hypertension, and diabetes also prevent the ability of the body to thermoregulate.

## DISCUSSION

### I. Federal Rule of Civil Procedure 12(c)

---

[1] "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . ." *Perez-Acevedo, v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008), quoting *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006) (alteration in original).

Fed. R. Civ. P. 12(c) permits "a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed," as long as the motion does not delay the trial. "A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008), citing *Curran v. Cousins,* 509 F.3d 36, 43-44 (1st Cir. 2007). However, a Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it implicates the pleadings as a whole. "In the archetypical case, the fate of such a motion will depend upon whether the pleadings, taken as a whole, reveal any potential dispute about one or more of the material facts." *Gulf Coast Bank & Trust Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004). Collins, Gaffney, and Pelletier filed their Motion for Judgment on the Pleadings on January 9, 2020. Unitt did not file a response.[2]

## II. Claims under 42 U.S.C. § 1983

Unitt's claims against all three defendants arise under 42 U.S.C. § 1983 and the Eighth Amendment. The Supreme Court has recognized an implied cause of action "for violations of an individual's rights under the Cruel and

---

[2] The court raised the lack of response with counsel on February 28, 2020, when counsel appeared before the court on a separate case involving Unitt. Counsel indicated that it was likely that the case against these three defendants would not be pursued. Since the hearing, nothing further has been filed.

Unusual Punishments Clause of the Eighth Amendment and the Due Process Clause." *Hui v. Castaneda*, 559 U.S. 799, 803 n.2 (2010), citing *Carlson v. Green*, 446 U.S. 14, 17-19 (1980); *Davis v. Passman*, 442 U.S. 228, 230 (1979). *See also Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397 (1971). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell and Stevens, JJ.)).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. An Eighth Amendment claim for inadequate medical care consists of subjective and objective components. *See Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc). As to the objective component, a plaintiff must plead facts, which, if true, show "a serious medical need for which [the plaintiff] has received inadequate treatment." *Id.* at 85. The subjective component requires factual allegations supporting an inference of "deliberate indifference" by the defendant. *Id.* at 83. Deliberate indifference in an Eighth Amendment context equates to recklessness in "the appreciably stricter criminal-law sense, requiring actual

knowledge of impending harm, easily preventable." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991).

Here, the defendants argue that the § 1983 claims against them should be dismissed because Unitt has failed to state an actionable claim against each of them.

A. Serious Medical Need and Deliberate Indifference

1. Stephanie Collins

Unitt asserts that as Assistant Deputy Commissioner for Clinical Services of the Massachusetts Department of Correction, Collins occupied a "position of authority where [she had] notice" of "conditions . . . lead[ing] to [alleged] deprivation of Unitt's 8th Amend[ment] rights" and violations of the Americans with Disabilities Act (ADA). Dkt # 59, ¶ 137. Specifically, Unitt alleges that Collins "failed to ensure monitoring and enforcement" of various Massachusetts Partnership for Correctional Health (MPCH) policies and procedures. *Id.* Unitt states that "on multiple occasions [she] corresponded [with] Collins [about] the depravity of the medical care/staff at [MCI-Framingham]." *Id.*

Unitt sues Collins in her official capacity, seeking injunctive relief. *See* Dkt # 59, ¶¶ 140, 147. Upon Unitt's release from Framingham, any such request, assuming its viability, became moot. *Cf. Soto-Torres v. Fraticelli*,

5

654 F.3d 153, 158 (1st Cir. 2011) (footnote omitted), quoting *Iqbal*, 556 U.S. at 676 (Unitt's claim would likely not succeed in any event as "[a] plaintiff bringing a *Bivens* action 'must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' There is no vicarious liability."). Therefore, the case against Collins will be dismissed.

2. Erin Gaffney

Unitt sues Gaffney in her individual capacity, seeking compensatory damages. Dkt # 59, ¶¶ 138, 144. Unitt alleges that as Deputy of Operations at MCI-Framingham, Gaffney, among others, "interfered with Unitt's prescription of med[ications] to [be] taken at 8.00 a.m./noon and 9.00 p.m. daily by removing Unitt's KOPs from her in HSU when she [was] a DOC placement [o]n June 6th 2016 and fail[ed] to ensure that her medications were given timely." *Id.* ¶ 111. Unitt highlights that her "ACE Inhibitors [were given to her] at all different times each day," such that they "were not being spaced apart appropriately." *Id.* Unitt says this led to "significant pain and suffering for thirteen days." *Id.*

On these allegations, the court cannot reasonably infer that Gaffney acted with deliberate indifference. Even if Gaffney had oversight in an

elevated supervisory sense over Unitt's medical care,[3] "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106 (footnote omitted). This Unitt has failed to do. Consequently, the claim against Gaffney will be dismissed.

3. Kyle Pelletier

Unitt sues Pelletier in her individual and official capacities, seeking compensatory and punitive damages as well as injunctive relief. Dkt # 59, ¶¶ 121, 139, 144, 146-147. According to Unitt, "Pelletier is the individual at FRA . . . responsible for implementation and monitoring of 103 DOC 408 [Reasonable Accommodations for Inmates] at the Institution pursuant to 103 DOC 408§02." *Id.* ¶ 4. To begin, the court notes that any request for injunctive relief, for the reason previously stated, is moot.

---

[3] Defendants also argue that Unitt's claim against Gaffney fails because Gaffney was not a medical professional and so "had no involvement in plaintiff's medical care." Dkt # 106 at 6. Defendants assert that "where, pursuant to DOC policy, decisions as to plaintiff's medical care, including access to prescription medications, were made by qualified medical professionals, it is clear that plaintiff is unable to show that the defendant Gaffney played any role in her medical treatment." *Id.* This explains in no small degree Unitt's inability to plead specific acts (or omissions) on Gaffney's part that played any direct role in her treatment.

7

The gist of Unitt's complaint against Pelletier is as follows. In 2016, a medical provider recommended that Unitt be allowed use of a "fan per ventilation." Dkt # 59, ¶ 49. Without access to a fan, Unitt "suffered a heat stroke and CVA [or Cerebrovascular Accident] on May 25th[,] 2016 and TIAs [or Transient Ischemic Attacks] on May 28th, 29th, and 30th[,] 2016." *Id.* ¶ 50. Unitt alleges that because of a lack of air circulation and insufficient air conditioning in prison cells, she and other inmates "were allowed to 'peg' the door (Oct. 18th 2016 until Jan. 9th 2018) for ventilation." Dkt # 59, ¶ 119. According to Unitt, in January of 2018, a new policy precluded doors from being "pegged." *Id.* ¶ 120. That month, she "requested an ADA accommodation to allow her door to be pegged for ventilation and better control." *Id.* ¶ 121. Unitt represents that she was "abused" and "threatened" by cell mates who were angered by her effort to keep her door open for ventilation and use a fan. *Id.*

Unitt approached Pelletier "concerning the failure of implementation of her ADA accommodations," *id.* – impliedly the use of the fan and the pegging of her door. Unitt alleges that "Pelletier kn[ew] of the significant risks of serious harm if Unitt [wa]sn't allowed to have her door open/pegged . . . as Unitt stated her needs and risks if her request was not granted." *Id.* Notwithstanding, according to Unitt, Pelletier told her that her concerns

8

reflected "room mate issues, not ADA issues." *Id.* Because Pelletier did not assist Unitt in implementing her requested accommodation[s], Unitt asserts that "Pelletier expect[ed] Unitt to implement her own ADA accommodations" in violation of applicable regulations. *Id.*[4]

Granted, the allegations against Pelletier amount to pretty thin gruel, but in the event the court has overlooked some aspect of the pleading that might create a trial worthy issue of deliberate indifference,[5] the court will grant Unitt a brief opportunity to respond (or otherwise forego prosecution of the § 1983 claim).

### III. Americans with Disabilities Act

Finally, Unitt alleges that Gaffney, Collins, and Pelletier violated the ADA. *See* Dkt # 59, ¶¶ 111, 121, 137. The only proper defendant in a claim

---

[4] That Pelletier is not a medical provider does not itself insulate her from a section 1983 claim alleging deliberate indifference to serious medical needs. It does not matter "whether . . . indifference [to serious medical needs] is manifested by prison doctors in their response to [a] prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under s 1983." *Estelle*, 429 U.S. at 104-105 (footnotes omitted).

[5] One would think under the circumstances that deliberate indifference on Pelletier's part would have consisted of taking affirmative steps to frustrate Unitt's resort to self-help in pegging the door to her cell.

9

under Title II of the ADA is a "public entity," which precludes individual liability. *See Wiesman v. Hill*, 629 F. Supp. 2d 106, 112 (D. Mass. 2009). Accordingly, the ADA claims against Collins, Gaffney, and Pelletier will be dismissed.

## CONCLUSION

For the foregoing reasons:

1. The claims under the ADA are DISMISSED as to defendants Collins, Gaffney, and Pelletier.

2. The § 1983 claims against Collins and Gaffney are DISMISSED.

3. The court will give plaintiff ten (10) days from the date of this decision to file an argument as to whether the § 1983 claim against Pelletier should go forward or it will otherwise dismiss the remaining claim with prejudice.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE